USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: 3/1/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

DAVID ORTIZ DORTA,

Plaintiff,

-against-

ANDREW SAUL, Commissioner of Social Security,

Defendant.

---------------------------------------------------------------X

**OPINION AND ORDER**

18-CV-396 (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

Currently before the Court is plaintiff David Ortiz Dorta's motion for attorney's fees pursuant to 42 U.S.C. § 406(b). For the following reasons, the motion is granted as modified below.

## I. INTRODUCTION

Ortiz filed an application for Disability Insurance Benefits on February 2, 2015, and an application for Supplemental Security Income on September 26, 2016. Dkt. No. 25, at 15. Both applications were denied initially and following a hearing before an Administrative Law Judge. *Id.* at 15–33, 126–37. On January 16, 2018, Ortiz timely commenced an action in this Court to review the ALJ's decision. Complaint, Dkt. No. 1. Ortiz was represented by Daniel A. Osborn ("Osborn") of Osborn Law, P.C., and signed an attorney fee agreement with the firm. Declaration of Daniel A. Osborn dated December 2, 2020 ("Osborn Decl."), Dkt. No. 45, ¶ 2; *see also* Dkt. No. 45-1, Ex. 1. The fee agreement provided that if Ortiz's case was remanded and he was awarded past due benefits, he would pay Osborn Law up to

25% of the award upon approval by the district court pursuant to 42 U.S.C. § 406(b). *Id.*

On January 31, 2019, Ortiz moved for judgment on the pleadings. Dkt. No. 34. On August 2, 2019, the Court granted Ortiz's motion and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g). Dkt. No. 41. On remand, the ALJ found that Ortiz was disabled and entitled to benefits. Osborn Decl. ¶ 12. The Social Security Administration issued a Notice of Award dated November 23, 2020, which indicated that $25,273.75 (representing 25% of Ortiz's past due benefits) was being withheld for payment of attorney's fees. Osborn Decl. ¶¶ 13–14; *see also* Dkt. No. 45-4, Ex. 4 at 4. Accordingly, on December 2, 2020, Ortiz filed the instant motion requesting approval of $25,273.75 in attorney's fees in accordance with 42 U.S.C. § 406(b) (Dkt. No. 43), along with a memorandum of law in support of the motion (Dkt. No. 44 ("Pl. Mem.")). On January 12, 2021, the Commissioner filed a response in his limited role "resembling that of a trustee for the claimant[ ]." Dkt. No. 48 ("Comm'r Resp.") at 1 (citing *Gisbrecht v. Barnhart*, 535 U.S. 789, 798 n.6 (2002)). The Commissioner does not object to Ortiz's attorney's fee application; however, he suggests that it may be appropriate for the Court to reduce the award by the amount that Ortiz could have received if Ortiz's counsel had made a timely application for fees under the Equal Access to Justice Act. *Id.* Ortiz filed reply papers on January 19, 2021. Dkt. No. 50 ("Pl. Reply").

## II. DISCUSSION

### A. Legal Standards

Pursuant to Section 206(b) of the Social Security Act, "[w]henever a court renders a judgment favorable to a claimant . . . who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation," as long as the fee does not exceed "25 percent of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b)(1)(A). However, even if the claimant agreed to a contingency fee arrangement, Section "406(b) calls for court review of such arrangements as an independent check." *Gisbrecht*, 535 U.S. at 807. To do so, courts must first determine whether "the contingency percentage is within the 25% cap . . . [and] whether there has been fraud or overreaching in making the agreement." *Wells v. Sullivan*, 907 F.2d 367, 372 (2d Cir. 1990).

A court must then consider the following factors to determine the reasonableness of a requested award:

> 1) whether the requested fee is out of line with the "character of the representation and the results the representation achieved;" 2) whether the attorney unreasonably delayed the proceedings in an attempt to increase the accumulation of benefits and thereby increase his own fee; and 3) whether "the benefits awarded are large in comparison to the amount of time counsel spent on the case," the so-called "windfall" factor.

*Nieves v. Colvin*, No. 13-CV-1439 (WHP) (GWG), 2017 WL 6596613, at *1 (S.D.N.Y. Dec. 26, 2017) (quoting *Gisbrecht*, 535 U.S. at 808), *adopted by* 2018 WL 565720 (Jan. 24, 2018); *see also Wells*, 907 F.2d at 371 ("best indicator of the 'reasonableness' of a contingency fee in a social security case is the contingency

percentage actually negotiated between the attorney and client"). With respect to the third factor—whether a requested fee would be a "windfall"—courts consider several factors, including: "1) whether the attorney's efforts were particularly successful for the plaintiff, 2) whether there is evidence of the effort expended by the attorney demonstrated through pleadings which were not boilerplate and through arguments which involved both real issues of material fact and required legal research, and finally 3) whether the case was handled efficiently due to the attorney's experience in handling social security cases." *Joslyn v. Barnhart*, 389 F. Supp. 2d 454, 456–57 (W.D.N.Y. 2005).[1]

**B. Analysis**

As a threshold matter, the requested fee is consistent with the 25% negotiated in the contingency fee agreement and there is no evidence of "fraud or overreaching" in reaching the agreement. *Id.* at 372. Moreover, in this case, each of the reasonableness factors weighs in favor of approving the attorney's fee request. With respect to the quality of representation, Osborn reviewed a 695-page administrative record (*see* Dkt. No. 25) before submitting "a detailed, non-boilerplate brief in support of" Ortiz's case (*see* Dkt. No. 34), which resulted in a

[1] The Supreme Court held in *Gisbrecht* that the lodestar method is not the touchstone for calculating attorney's fees under Section 406(b). 535 U.S. at 806. However, some courts in the Second Circuit have observed that "[a]lthough the reviewing court may not use the lodestar method to calculate the fee due, a record of the number of hours spent on the case in federal court may assist a court in determining whether a given fee is reasonable." *Sweda v. Berryhill*, No. 16-CV-6236 (PKC), 2019 WL 2289221, at *2 (E.D.N.Y. May 28, 2019) (quoting *Benton v. Comm'r of Soc. Sec.*, No. 03-CV-3154 (ARR), 2007 WL 2027320, at *2 (E.D.N.Y. May 17, 2007)).

successful remand and the award of past due benefits. *Nieves*, 2017 WL 6596613, at *2. Additionally, there is nothing in the record to suggest that counsel unreasonably delayed the proceedings.

Moreover, in light of Osborn's "particularly successful" efforts that ultimately secured Ortiz more than $100,000 in past due benefits (before fees) as well as ongoing future benefits, Osborn's *de facto* rate of $434.26 per hour (*see* Pl. Mem. at 6) does not give rise to any concern that awarding the requested fees may amount to a "windfall." *Gisbrecht*, 535 U.S. at 808. Indeed, the requested fee "is within the range of effective hourly rates that have previously been deemed reasonable by courts in this Circuit." *Valle v. Colvin*, No. 13-CV-2876 (JPO), 2019 WL 2118841, at *3 (S.D.N.Y. May 15, 2019) (awarding *de facto* rate of $1079.72); *see also Ogirri v. Saul*, No. 16-CV-9143 (JLC), 2019 WL 3023804, at *3 (S.D.N.Y. July 11, 2019) (awarding *de facto* rate of 855.86); *Nieves*, 2017 WL 6596613, at *3 (awarding *de facto* rate of $1,009.11). Furthermore, contingency agreements, like the one here, present risks of non-payment; "payment . . . is inevitably uncertain, and any reasonable fee award must take account of that risk." *Nieves*, 2017 WL 6596613, at *2 (quoting *Wells*, 907 F.2d at 371).

Finally, although the Commissioner did not object to the reasonableness of the attorney's fee award, he did "submit that the Court may wish to consider the fact that counsel did not file an Equal Access to Justice Act ("EAJA") fee petition in the underlying case, essentially depriving Plaintiff of a refund of an EAJA award. Comm'r Resp. at 1. "While an attorney is by no means required to apply for EAJA

fees in every case, his failure to do so in certain cases may bear on the reasonableness of any future fee he requests under the SSA." *Gallo v. Astrue*, No. 10-CV-1918 (JG), 2011 WL 5409619, at *2 (E.D.N.Y. Nov. 8, 2011). In cases "[w]here an EAJA application would have succeeded, each dollar that would have [been] awarded under the EAJA (up to the amount requested under the SSA) is a dollar the claimant should receive but does not." *Id.* Accordingly, courts are "entitled to take into account counsel's failure to timely file a colorable EAJA application" when determining the reasonableness of an attorney's fee application. *Blair v. Colvin*, No. 5:11-CV-404 (GLS) (GHL), 2014 WL 3891321, at *1–2 (N.D.N.Y. Aug. 7, 2014).

Here, Osborn admits that he failed to timely file an EAJA application. Pl. Reply at 3. He explains that he began negotiating a mutually agreeable EAJA fee with counsel for the Commissioner in August 2019, but negotiations apparently ceased shortly thereafter. *Id.* at 1–2. On November 3, 2019, Osborn apparently became aware that he inadvertently missed the deadline by three days and asked counsel for the Commissioner to consent to a brief extension of time to file the EAJA application. *Id.* at 2; Osborn Decl. ¶¶ 9–10. Counsel for the Commissioner declined to do so and Osborn therefore never submitted an application for EAJA fees. Osborn Decl. ¶ 11.

To his credit, Osborn did not outright disregard the opportunity to seek fees under the EAJA. Rather, it appears that Osborn made earnest attempts to recover EAJA fees on consent and, even though he missed the deadline to file an EAJA fee

application, immediately attempted to remedy his mistake by requesting an extension and restarting negotiations with counsel for the Commissioner. It is also worth noting, as Ortiz points out, that the Commissioner could have consented to an extension to file the EAJA application; such a professional courtesy seems particularly warranted here, where the parties had engaged in prior negotiations and, based on Osborn's recollection, the Commissioner had actually offered $7,700 to resolve the fee award under the EAJA. *See* Dkt. No. 45-3.

Nevertheless, Osborn's failure to timely submit an EAJA application should not be to the detriment of Ortiz. *Trivelli v. Astrue*, No. 07-CV-4329 (NGG) (CLP), 2010 WL 5477828, at *4 (E.D.N.Y. Nov. 15, 2010) ("where counsel failed to apply for EAJA fees, 'the client should [not] shoulder the financial burden of the lost EAJA fees'") (citation omitted), *adopted sub nom. Trivelli v. Acting Comm'r of Soc. Sec.*, 2010 WL 5476992 (Dec. 30, 2010). Indeed, as courts in this District have acknowledged, "because a successful application for EAJA fees 'saves the plaintiff money [,][i]f the attorney could have received EAJA fees but failed to apply for them, it is unfair to make the plaintiff bear the burden of this error.'" *Allen v. Comm'r of Soc. Sec.*, No. 10-CV-68 (LAP) (FM), 2012 WL 1596661, at *5 (S.D.N.Y. Apr. 27, 2012) (citing *Iliceto v. Sec'y of the Dep't of Health and Human Servs.*, No. CV-83–2160, 1990 WL 186254, at *1 (E.D.N.Y. Nov. 14, 1990)), *adopted by* 2013 WL 6331727 (Dec. 5, 2013). Osborn does not address this line of cases in his motion papers. Under the circumstances then, it is appropriate to reduce the total amount of attorney's fees requested by the potential amount of EAJA fees that could have

been awarded. *See, e.g.*, *id.* ("By failing to timely file an application for EAJA fees, however, plaintiff's counsel forfeited a maximum of $3,159. It therefore is appropriate to reduce counsel's Subsection (b) fees by that amount."); *Gallo*, 2011 WL 5409619 at *3 (reducing total attorney's fees requested by amount plaintiff could have received if he had successfully applied for EAJA fees).[2]

Accordingly, Osborn is awarded $13,469.98 in attorney's fees, representing the difference between the amount he requested pursuant to 42 U.S.C. § 406(b) ($25,273.75) and the amount he could have recovered if he had timely applied for EAJA fees ($11,803.77).[3]

---

[2] Osborn proposes that if the Court is going to reduce his 406(b) fee, the reduction should not exceed 10% of the amount requested. Pl. Reply at 4. However, Osborn cites no authority in support of this proposal, nor is the Court aware of other decisions in which judges have made such an arbitrary reduction.

[3] Based on the Commissioner's calculation, the potential EAJA fees are $11,803.77. Comm'r Resp. at 2 n.1. Because Osborn did not object to, or otherwise dispute, the Commissioner's calculation of the EAJA fees, *see* Pl. Reply at 3, the Court will accept this amount as an accurate total of EAJA fees that Osborn could have recovered. *See Hiciano v. Apfel*, No. 98-CV-4037 (DLC), 2002 WL 1148413, at *3 (S.D.N.Y. May 29, 2002) (awarding EAJA fees "according to defendant's calculations, which plaintiff does not dispute").

## III. CONCLUSION

For the reasons stated, the Court awards Osborn $13,469.98 in attorney's fees. The Clerk of the Court is directed to close Docket No. 43 and mark it granted as modified by this Opinion.

**SO ORDERED**.

Dated: March 1, 2021
New York, New York

JAMES L. COTT
United States Magistrate Judge